Good morning. Welcome to the Sixth Circuit. If you are the appellant, if you could just let us know how much time you have reserved for rebuttal, we'd appreciate it. Clerk may call the first case. Case number 18-2304, Robert Davis et al. v. Detroit Public Schools Community et al. Oral argument to be 15 minutes for plaintiff and 15 minutes to be shared by the defendants and interveners. Mr. Patterson for the appeal. Your Honor, I reserve three minutes for rebuttal. Very well. Thank you. We're here this morning on the appeal from the United States District Court for the Eastern District of the matter where Mr. Davis and Ms. Wilcoxon sued the Detroit Public School District for its failure to give to them the right that each taxpayer in the city of Detroit had statutorily granted to vote on the use or the, they would allege, misuse of the operating millage for the poorest district in the United States. Michigan compiled law section 380-1216 of the revised school code states that money raised by tax shall be used for a purpose, shall not be used for a purpose other than that for which it was raised without the consent of a majority of the school electors of the district voting on the question at a regular or special school election. In 2012, Ms. Wilcoxon voted along with the other members of the Detroit electorate for an operating millage to operate the poorest school district in the United States and indeed it was passed and assessments were made or levies were made against the assessed value of Ms. Wilcoxon's home and the other electors, homeowners in the city of Detroit school district. Just in two... Can you, can I ask you a question and I understand that some of the background here but I want to ask you a question about the standing or I guess what the remedy is in this case. Are you asking ultimately if you were to prevail what would happen? Would there be a vote on whether this money should have been diverted and then it would, you would, the money would get returned or how would it work? Well, the money hasn't been captured at this point. It's captured over a period of I think almost 40 years, whatever the... So none of the money has been captured? I think some has and that raises the issue. The... So what order would you be seeking ultimately? I would seek the right to vote, the statutorily granted right to vote that each taxpayer in this district voting for the operating millage of the school district. So you would seek perhaps what an injunction against this usage or this diversion absent approval? Without the approval first of the electorate. I mean they may approve it. I mean they're all big fans of the Detroit Pistons but the right to vote is as we know a fundamental right of this democracy and the Michigan legislature gave that to every taxpayer that voted for a millage the right to vote again if they wanted to change from operating finances of the school to in this case reimburse two billionaires. That's what the money was used for. The building was built. The building is a lovely building, but the right to vote is so fundamental and has been precluded by the efforts of the... Do you have any cases where we've... where federal courts have done that, what you're asking? I mean in order where we're saying you have to do... conduct an election? Federal courts remedy statutory violations of the right to vote I think is not surprising. That's certainly within the scope of the remedy that would be available to a taxpayer. The cases of municipal standing for taxpayers raising the issue on the spending of FISC all indicate that the court has more than ample remedy to enjoin the expenditures. How many times have we applied those municipal taxpayer standing cases outside of the establishment cause? I'm not aware of any outside of the establishment cause. Or even a constitutional violation. Well, they get wrapped in that. What could be more of a violation of a right than to deny the right to vote to a... But are you alleging that somebody was denied a constitutional right to vote in the complaint? You're not, right? It's a violation of these Michigan statutes, which are obviously extremely important, but ultimately just a violation of state law, right? It is ultimately just a violation of state law, but it's a violation of a fundamental right that a citizen of the state has to vote upon the municipal expenditure in this case. So I'm interested, I mean, what is the injury for standing purposes as you conceive of it here? The denial of the right to vote on a spending measure, a capture of money that was voted upon by this taxpayer, this litigant, for operating millage, and now it is going to be devoted to a different use and it's a violation of their fundamental right, granted by the state legislature, recognized by the state legislature. I'm uncertain as to whether a taxpayer might have the right to challenge something like that irrespective of 380.1216, but 380.1216 makes it very explicit, as does the Supreme Court's... Yeah, I mean, to kind of follow up Judge Nalbandian's question, I've never seen anything, well, I don't know, like an injunction saying you must hold a certain type of election, as opposed to elections must be held in a manner consistent with constitutional guarantees, but you must hold an election. I mean, is there, have you ever, any case that that you've seen in your research where a federal court has ordered a state to hold an election? Maybe, I don't know. No, the idea of the remedy, certainly a vote would be the ultimate choice of the plaintiff in this case, but a injunction to not expend or capture fiscal monies of the municipality and put them to a different use would work as well, and that's a pretty traditional injunction that this court or any other federal court certainly could recognize, and has, and has. Just remind me, it's been a little while since I read the briefs, was this issue litigated standing in the district court? It was not, it was part of... Somebody brought it up. Judge Goldsmith's opinion. Oh, yeah, all right. It was litigated in that sense, and it was discussed. Judge Goldsmith gets into this in his opinion. All right. What do you, what do we do with Judge Clay's, I guess, what was a dissent, I suppose, or not majority opinion, though he opined on this question of standing and basically said you wouldn't have standing for these claims, right? Which is curious in the view of this court's Smith decision. I think that this court has said the interest of taxpayer and municipality in the application of its monies is direct and immediate, and by remedy, an injunction to prevent the misuse is not inappropriate. I mean, that's your own... I mean, his point was basically what's done is done. I mean, you should have, I don't know that he says this this way, but essentially you should have back in 2013, 2016, you could have done this stuff. Now, the whatever... I would like to address that because I recognize that's how the Appleys have attempted to wrap this, but in fact, the project that was proposed in 2013 was for a specific building for the use by the professional hockey team. The new legislation was a new bond issue capturing some, I think, 54 million dollars of the school district's operating budget in order to accommodate a new venture to bring the Detroit Pistons to Detroit from the suburbs. That was a brand new project and was proposed as a new project, expanding an existing project. Did the existing project divert the school, the millage? It did, but not the 54 million that this project chose to divert. But it was the same problem, right? It's not the same financing. They chose to refinance. Interest rates had gone down from two... Did they use the TIF statute and say, hey, under the TIF statute, we can capture money to do redevelopment? They did. They did. And the TIF statute is pretty clear. They can do that, right? TIF statute is clear. They can, but they have to accommodate 380.1216 that says you can do it, but first you have to get the vote of the taxpayers that devoted this money. They say in the TIF statute that you have to accommodate 380... You don't. They're in conflict. It doesn't say that in the TIF statute, but there's two statutes passed by the same legislature, different years, that one says you can't capture the money without a vote of the people. If the people vote for it, they can certainly capture it. Is that a question that the Michigan Supreme Court ought to answer? It ought to. Did anybody ask that, sir? It has not been. It remains. But that raises the issue of the Bigger decision, which I think is clearly misplaced by Judge Goldsmith as a basis for denying plaintiffs the right to proceed. Bigger involved the Silverdome in Pontiac, and it had been discussed for some two or three years. It was well known, and the case didn't get filed until, I think, the day before the bonds were to be sold. So it was a pretty traditional lachie's decision, unlike this one, where in 2013, the school district was operating under an emergency manager. All of the citizens and taxpayers in the district had been denied every right to operate the schools. But what about just kind of the general principle that if you want to stop a project, you better do it at the time it's being adopted, essentially? We're not going to be able to, you know, put the whatever animal back in the barn or whatever the... But it's a different project. It's a different project. The Pistons have a brand new building somewhere down the street. That's not part of the Little Caesars arena. So this particular lawsuit, which is only about the second project, was brought when in relation to when that project... Before it had been approved by the City Council, before... Yeah, no, it was timely. It absolutely was timely as to the second project. It's a different project. They chose to refinance and include financing, and I see my time is up, but that was a decision they made. That's okay. Just real quick. I mean, am I correct in understanding that the claims that you're current... whose dismissal or whatever judgment adverse to you are... Yes. Is that it? That is it. And all of those were ones that the District Court dismissed on standing grounds, right? Are you arguing that your clients have any special injury apart from those that would be suffered by every municipal taxpayer in the city? No, I'm relying on your Smith case where it doesn't require that. I'm also a cousin of Mr. Davis who separately pled a class of one claim for his mistreatment. And your clients here, the plaintiffs, it's Mr. Davis, and who else do we have? Ms. Wilcoxon. And who is she again? I'm sorry. She's a taxpayer, lives in the city of Detroit. Yeah. Voted for the millage in 2012. Okay. She was not at the meeting. She was... well, she might have attended. She actually did attend that meeting, yeah. No, I... she didn't speak at the meeting. Yeah. She attended. All right. Thank you, sir. Hear from the school district. Good morning, Your Honors. Good morning. Kevin Campbell on behalf of the Detroit Public Schools Community District, Dr. Taylor and its board. I will reserve eight minutes for my colleague, Mr. Bressack, representing the intervening defendants. And for my seven minutes, I'd like to focus a few points on the equal protection class of one claim asserted by the plaintiffs. Before we jump into that, you know, we're always worried about subject matter jurisdiction when there's a question. I mean, the district court dismissed, I think, three or four of these claims for lack of standing. Correct. Right, including all the ones on appeal. Why, in your view, does Smith not do what Mr. Patterson said, i.e., provide standing not with... irrespective of any... the absence of any special injury here? Well, as argued in our brief, Your Honors, I respectfully submit that these issues were raised the first time that we were here. It's already been covered. That is our position. That's the law of the case doctrine. I read these briefs, like, two months ago. What do you mean they've been... I mean, are you talking about Judge Clay's opinion? Correct, the majority opinion. Judge Clay's... that part of Judge Clay's opinion is not the majority of that panel, right? I mean, it's... it is Part 2B, and we say in the beginning, to the extent that Part 2B of this opinion is inconsistent with the concurring opinion, the concurring opinion constitutes the opinion of the court, and Judge Boggs says he's not deciding the standing question on those other counts, right? That's... we're not bound. I mean, under our rules, obviously, we're bound by published decisions of the court, but not if it's not a majority, right? Correct. As I recall from that decision, there's a difference of opinion as to what the injury was that was being alleged, whether it was the the loss of revenue, misuse of revenue, rather, or alternatively, the failure to place the issue on the ballot for a vote. Right, but what the court said was the only two counts that we're going to look at are counts dealing with not putting something on the ballot, right? And the misuse of the TIF revenue goes to the counts that we have in front of us today, and Judge Clay said, oh, by the way, they don't have standing on those things because, you know, you... once the money's gone, or once the vote is done, you... you're done, and Judge Boggs said, hey, wait a minute, we're not deciding that, right? So how are we... that's not a... so Judge Clay's opinion supports you, for sure. I'm sorry, supports... yes, supports you, but it's not a majority, right? Well, I would urge this court to adopt Judge Clay's reason. Okay. And... and I apologize for the confusion, and that's essentially what we argued in our brief, that while the court was limited to... it didn't... it's... the... the majority decision did not apply to all state claims. I think that its analysis is... But he does have this footnote that says, by the way, plaintiff Wilcoxon might have suffered an injury under Smith, right? Municipal taxpayer standing, correct. I don't view anything in the arguments being asserted now whereby plaintiffs are asserting municipal taxpayer standing. It's not been alleged in their complaint, and as I've construed their... their... their briefing here, it's a recycling of the old arguments. Well, what would they have to assert other than that one of them... not Davis, obviously, the other... Wilcoxon is a taxpayer. Sure. And allege that the money is being misused, or misdirected, or whatever it is, and that there should be a vote, you know. I mean, other than those allegations, what would they have to allege to fall under Smith? I mean, putting aside redressability... That's what I'm... I mean, yes, they would have to establish the other... As to injury. Elements. Yeah, and I think that's what's... They fail on redressability? Precisely, and I think that the... Because we couldn't order a vote? Well, because I think... I would frame it this way, and first of all, I think opposing counsel has conceded the fact that he's unaware of any case whereby this court has done that. I'm not aware of any case. Well, but we... Go ahead. But he's right, though, that if we have an election where there's massive problem with provisional balloting or with the denial of the right to vote, that we could order another election, couldn't we? I mean, I think that's been done. I mean, what is the remedy if somebody proves massive denial of the right to vote? I mean, I understand that would be constitutional, would be a right to vote under the 14th Amendment and whatever, but I mean, that could be a remedy, right? The way I understand it, Your Honor, is hypothetically, if, in order we're granted to place this issue on the next ballot, allowing DPSCD to place the issue on the next ballot, that's what I understand the plaintiffs here want. They want the DPSCD to take whatever steps it can take to get this on the ballot for a vote. So if that happens, first of all, it's speculative. We don't know how the Detroit electorate's going to vote on the issue. But even if there's a vote against the capture of these school tax revenues, where will that get us? The Michigan Supreme Court, in in-ray advisory opinion, which has been cited, has squarely addressed this issue and held that there is no conflict, that this is within the power of the state of Michigan to enact tax capture. Well, we're getting, that's the merits. That's the merits. It would seem to me that redressability would be satisfied simply by an injunction saying you can't spend the money unless there is voter approval. And then, you know, you can have an election if you want to spend the money. We're not, we don't have to order an election. We just say you can't spend the money. I mean, as a matter of redressability, apart from the merits, hard to see what the problem is there. I suppose that's one way to look at it, Your Honor. So, do you mind if I ask what the merits are? Are you done with that? Can you talk about that Michigan Supreme Court case? I mean, have they reconciled this so that you can proceed? Sort of, you know, declared that this is lawful. You can just go ahead and no election. Correct. Not with, so what is this MCL 380-1216 mean in that event? I mean, is this just a dead letter? As I construe that statute, I view it, I construe it as the taxing authority, or the, excuse me, rather the monies received by the Detroit Public Schools Community District have to be used for the purpose that they were intended to be used. The DPSCD can't use them for any other purpose. That's precisely what they're complaining about. I mean, why can't you reconcile them and just say the one statute calls for a vote specifically for school districts, right? The TIF statute covers other things, including that, and you can divert school revenue, of course, under the TIF statute. But you, if somebody wants to have a vote on it, or it has to be voted on in order for you to use that money that way, why can't we just say that's the way you look at the statutes? They fit together. Respectfully, Your Honor, I would disagree. I think that if, again, if if the plaintiffs had their way, and the DPSCD was ordered to take steps to place this issue on the ballot, and there is a we don't like this. We don't want a capture of our revenues. I should say the incremental tax revenues by the Mr. Bressack's clients. I come back to the question, where would that get anyone if it's a Supreme Court of Michigan has said that this is it addressed 380-1216. Within the context of the TIF statute, and squarely held, that... We certainly would submit that it does. I guess I'm just a little bit puzzled. So that, so you're saying that case resolves? Absolutely. That we should look to that case to resolve, if we were to look at the merits, the possible conflict. I would urge this court to rely upon that decision, as I can read the decision. It is not... It addresses a variety of issues. It's not perhaps a model of clarity. I do believe that it does address the issue at hand, squarely. Question answered, did you? Yeah. Okay, we are going to have to let your friend at the table speak. There's no other questions, with respect to Equal Protection? I'm sorry, yeah. Thank you, Your Honor. All right, Mr. Bressack. Good morning, Your Honor. Daryl Bressack on behalf of the Detroit Downtown Development Authority, and the Detroit Brownfield Redevelopment Authority. Rather than getting into what I had prepared, I can address some of the questions that you had raised. Are you presenting a different, you know, perspective, or are you addressing different issues, or kind of, what are your respective missions here on that, from that table? Well, as far as my clients, there was already an appeal from the dismissal of these state law claims. The judge, Judge Goldsmith, certified appeal of all state law claims that were dismissed. Plaintiff's counsel appealed two of those claims. And this court ruled on the, this court affirmed, Judge Goldsmith, on two of those claims. Plaintiff's counsel essentially sandbagged and waited until the one remaining claim that had nothing to do with my clients, the Equal Protection claim, was dismissed, and then decided to appeal the remaining state law claims that had been dismissed in that July... But that original order was a bit ambiguous as to what was being certified for appeal, as far as the state law claims, wasn't it? I'm not, I wouldn't characterize it as ambiguous. The judge very clearly said, dismissal, I'm sorry, appeal of all, the dismissal of all state law claims. I think... But there was a mention specifically of the two claims that the prior panel of our court addressed. I think the mention was in reference to the relief that plaintiffs had been seeking. They filed the motion asking for immediate appeal of those two claims. And the judge considered it. The judge, however, decided that, no, it makes sense under 54B, we're going to treat these state, the dismissal of the state law claims as a discrete unit, and you can appeal those. They didn't. They waived the right to now appeal those claims at this time. Was there an argument in the first appeal to our court that those other claims had been waived? We didn't think we needed, no, we didn't think we needed to raise that argument because they have the, I think, the reason to only appeal certain claims. They did that here, even now, when the federal claims that had been dismissed, including the claim of the denial of the right to vote, the claim of denial, federal due process denial, they didn't appeal those. They exercised that same strategic discretion now. Which claims are you complaining about them appealing in this appeal? All of the counts that they are appealing right now, other than the Equal Protection Claim against the school district. So again, we're talking about whatever I said before, 10 to 10, 11. Correct, all of them. Those are all state claims. Other than 8 and 9. Correct, because they're not appealing those now. So what, I mean, what doctrine are you invoking exactly? It was, there was that, it was a rule 54 certification, right? That's correct. And so what doctrine are you invoking? If you don't bring your claims to the court, what doctrine? So is there a case or something that says, if a district court enters some, you know, Rule 54 partial judgment, that's your one and only chance to appeal those claims, as opposed to waiting until it's all over. Brinley v. McClellan, 61 F3rd 507, Reese v. M. Barr, W. M. Barr, 70. What do they say? That essentially you have to bring your claims, if you don't, you lose your claims that you don't. One-shot deal when the Rule 54 thing is entered? I don't know that they were in the 54B context specifically, but essentially the same concept. If you don't appeal your claims, when you have your opportunity to, you can't. Do you have a case involving a partial judgment applying this rule, as opposed to something where district court enters judgment, it comes here, we remand as to, you know, three claims, they don't appeal the dismissal of two others, and then they want to start litigating the two others. I don't have a case that speaks... That might be an important distinction. I mean, I guess I'm not sure, but it's not obvious to me that this situation is one where they're obligated to do everything early. Yeah, I do think they were obligated to. I think those cases speak to that, but I absolutely understand your point, Your Honor. So what else you got? If you want me to get into the merit-take-free time? It's your time. Sorry, yeah, on municipal taxpayer standing, I'd point out that they did not raise that to the trial court, never, not once. It doesn't matter. So they don't get into, really, in their briefing, the bigger doctrine, so even if they don't have standing... What about his argument that for the second project, the 54 million, whatever it is, they did act before it was even adopted by the City Council? I don't know that that makes a difference, because the actual diversion of tax increment revenue was well known long before that happened. What do you mean by well known? It was a matter of public record, it was brought to the public, it was approved by Detroit City Council, I believe there were media reports on it, I don't think. So this is for the second project? This is for both. So this is for the initial capture of tax increment revenue. So if we go even back further, the DDA plan... My understanding of his argument was, yeah, the first project in 2013, whatever that was, I mean, they didn't file anything back then, obviously. But for the second part, which is the Pistons part or whatever, they acted promptly and bigger doesn't apply. I think that's a distinction without a difference, because we had already made public quite a long time ago, and in the DDA tax increment plan, that we were going to capture money from this millage. The quote-unquote second project wasn't a surprise? It was all part of the same thing? Is that what you're saying? Essentially, yeah. We had already announced, and it was already well-known, and it happened for years, that we were capturing taxes from this millage, just like we do from every other non-specifically exempted millage. And that's what matters. It doesn't matter how we decide to use that particular money that's already been captured, that's going to go to the DDA, that's going to go to the DDA under Michigan law. Michigan law is clear. So the actual diversion or capture of the money was already done. What you were going to do with it, that's what the second project was deciding what to do with it. But the decisions about diverting the money had already been made, and if they had wanted to challenge that, they should have done it before. Is that right? That's correct. With the caveat that I don't think they had the right to challenge it at any point, because Michigan law is clear that DDAs can intercept tax increment revenue. It's not even taking revenue that would initially have been raised under that millage. The entire concept of DDAs is they ameliorate deterioration of property value, they contribute to development, so that creates increase in taxes. They didn't take the specific incremental revenue, any of the incremental revenue from the millage that was approved by the voters in 2012? Theoretically. That's the concept of DDAs. I can't say for certain that that's how it plays out in every circumstance, but that is the general concept. That the DDA creates an improvement in the tax base, and so the capture that the DDA is taking is really from that excess over the initial base that would have been captured anyway. It's a virtuous circle, essentially, at that point. Okay. Thank you, Mr. Bresak. Thank you, Your Honors. Your rebuttal. Virtuous. The Michigan Supreme Court opinion, an advisory opinion that they don't often issue, and I would urge the Court to look in there and you will find a specific paragraph or sentence that says we are only deciding that TIFA is constitutional, we are not deciding how it may or may not impact other statutes. That's very specific, that's in that opinion. They do urge us to, in looking at a TIFA and its conflict with 1260, to reconcile the statutes. And they are reconcilable. The voters can certainly vote to allow this capture. But the Supreme Court constitutionality opinion itself said we are only deciding that it's constitutional. We are not deciding how it may or may not impact. Under the plan that they're doing here that you don't like, I mean, how long is this period of capture? How long is that going to be going on? Well, and that's where I think Judge Clay is mistaken. I think he feels that it's over and done. Indeed, the capture goes on for the period of the bond, which I think is 30, 40 years. So that amount of time, revenues that you think should be going to the schools are going to be, you know, in part going to the schools. Exactly, exactly. And indeed, a newly elected school board may choose to put this to a vote. It's certainly possible. It's certainly possible, it's certainly something my clients have considered. They generated 7,000 signatures to put this on the ballot within two weeks. Your client himself is not a City of Detroit, or Mr. Davis is not a City of Detroit taxpayer? Mr. Davis, the gadfly, is not. I don't understand how he has municipal taxpayer standing. He does not. Ms. Wilcoxon does. What kind of standing does he have? He has the class of one standing for the- What's his constitutional injury here? His constitutional injury was that he was treated differently than Ms. Moore and other- So it's just he didn't get to talk. Right, exactly. I understand, thank you. His claim is just out of the meeting, right? Pardon? His claim is out of the meeting where he was- Yes, it is, it is, it is. Then Ms. Wilcoxon has- It is, it is, it is. Helpful, thank you. With respect to counsel's statement that it's a distinction without a difference, $54 million is not a difference? I mean, come on. This is a brand new building down the street. They had to do a whole new financing for this brand new building. They had to do a new financing, but was the money, was it already, was the diversion or capture already approved? For the first project, not for this $54 million new building. Was there always incrementally more money that had to be diverted for the second project? $54 million more, that's correct. Was the financing for the second project already obtained before you brought your lawsuit? No, it was not. It was not. In fact, that was part of the urgency that they urged the judge to decide it quickly on. Was there anything with respect to the second project that had been done before you brought your lawsuit? Memorandum of understanding. It was moving along. It hadn't gone yet to city council when we filed, which is necessary in order to enlarge the district to make it eligible, the TIFA district. So, no, we were very timely and would have been, I think, in 2013 had it not been for this coming through at the time of an emergency manager's operation of the school district and on the eve of the city of Detroit having an emergency manager take away all the citizens' rights. So, was the first project the Red Wings? Yes. The second project is the Pistons. It was the Pistons. And to accommodate them, they built a brand new building practice facility. It's lovely. They used that. They expanded the district to include that building. So, for Ms. Wilcoxon, is it just the Michigan statutory claims that she's making now? That they're acting contrary to, you know, what is it, the 380? 380-1260. Yeah. That she's not bent and that her tax dollars that she's paying on the millage she voted for have been diverted and are being spent and used to reimburse two billionaires. And she's very upset about that. I mean, that's a bit provocative. That's how she sees it. I mean, it's, yeah. So, just so I make sure I understand your argument again, you're saying she has municipal taxpayer standing, the diversion of these funds violates 380- 1260. Whatever. And based on your construction of the statute, the Michigan Supreme Court opinion doesn't hold the contrary. We ought to construe it the way you think, and that's it. In pari matria, there's plenty of Michigan Supreme Court law on how to read two statutes, reconcile them. And they are reconcilable. Put it to a vote, and if they approve it, they approve it. Interesting. All right. Any further questions? All right. Thank you, sir. Case can be submitted. Clerk may call the next case.